# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ALAN L. FEUERBACHER and<br>BILLIE M. FEUERBACHER<br><br>v.<br><br>WELLS FARGO BANK, NATIONAL<br>ASSOCIATION AS TRUSTEE FOR<br>ABFC 2006-OPT1 TRUST, ASSET<br>BACKED FUNDING CORPORATION<br>ASSET-BACKED CERTIFICATES,<br>SERIES 2006-OPT1, OCWEN LOAN<br>SERVICING, LLC, SAND CANYON<br>CORPORATION | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 4:15-CV-59<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Joint Motion for Summary Judgment (Dkt. #89). After reviewing the relevant pleadings, the Court finds that the motion should be granted.

## BACKGROUND

This lawsuit involves real property that is owned by Plaintiffs, located at 7012 Nicki Street, Dallas, Texas 75252 (the "Property") (Dkt. #89 at p. 2). On June 5, 2006, Alan L. Feuerbacher ("Alan"), obtained an extension of credit (the "Loan") from Miracle Mortgage Corporation ("Miracle Mortgage"), the terms of which are set forth in a Texas Home Equity Adjustable Rate Note (the "Note"), the Texas Home Equity Security Instrument (the "Security Instrument"), and the Texas Home Equity Affidavit and Agreement (the "Home Equity Affidavit") (Dkt. #89 at pp. 2-3). Alan's wife, Billie M. Feuerbacher ("Billie"), did not apply for the Loan and was not a borrower on the Loan, and she did not sign the Note on the day of its origination (Dkt. #89 at p. 3). However, Billie signed the Security Instrument, the Home Equity Affidavit, an Acknowledgment of Fair Market Value of Homestead Property ("FMV

1

Acknowledgment") and numerous other documents in connection with the Loan as a non-borrowing spouse (Dkt. #89 at p. 3).

> Plaintiffs represented in the Home Equity Affidavit that
>
> The Extension of Credit is secured by a voluntary lien on the Property created under a written agreement with the consent of all owners and all spouses of owners, and execution of this Texas Home Equity Affidavit and Agreement is deemed evidence of such consent. The Extension of Credit is of a principal amount that, when added to the aggregate total of the outstanding balances of all other indebtedness secured by valid encumbrances of record against the Property, does not exceed eighty percent (80%) of the fair market value of the Property on the date the Extension of Credit is made. The Extension of Credit is being closed, that is I am signing the loan documents, at the office of the Lender, an attorney at law, or a title company. The Lender and each owner of the Property have signed a written acknowledgment as to the fair market value of the Property on the date the Extension of Credit is made.

(Dkt. #89 at p. 3 (citation omitted)). However, Billie and Alan (together, "Plaintiffs"), assert that this was not a sworn affidavit (Dkt. #94 at pp. 3-4).

Consistent with Plaintiffs' representations in the Home Equity Affidavit, Plaintiffs further stated in the FMV Acknowledgment that "[o]n the date of closing, the fair market value of the Property is $416,000.00." (Dkt. #89 at p. 4). The FMV Acknowledgment was supported by a Collateral Risk Analysis Appraisal Waiver Certificate in which an appraisal waiver was granted on May 26, 2006, contingent upon the successful completion of a 2070 Exterior Inspection, which subsequently occurred (Dkt. #89 at p. 4).

On October 6, 2009, Billie filed a Voluntary Petition for bankruptcy under Chapter 7 of the Bankruptcy Code (Dkt. #89 at p. 4). Six days later, she filed her schedules (Dkt. #89 at p. 4). The same day that Billie filed her schedules, she also filed an Amended Statement of Financial Affairs and a Chapter 7 Individual Debtor's Statement of Intention (the "Statement of Intention") (Dkt. #89 at p. 5). In the Amended Statement of Financial Affairs, Billie declared under penalty of perjury that she had made monthly payments on the Loan in the four months preceding her

2

filing for bankruptcy (Dkt. #89 at p. 5). She also identified Alan as her spouse and as a person in possession of her books of accounts and records (Dkt. #89 at p. 5). In the Statement of Intention, Billie declared under penalty of perjury that she intended to retain the Property (Dkt. #89 at p. 5).

On January 6, 2010, the bankruptcy court granted Billie a discharge based on her representations in her schedules and other filings in the bankruptcy proceeding (Dkt. #89 at p. 5). The following month, Billie filed amended schedules, but they did not contain any amendments to the representations discussed above (Dkt. #89 at pp. 5-6).

The Security Instrument was initially assigned of record by Miracle Mortgage to Option One, and then assigned of record by Sand Canyon Corporation ("Sand Canyon"), formerly known as Option One, to Wells Fargo (Dkt. #89 at p. 4). Ocwen Loan Servicing, L.L.C. ("Ocwen") began servicing the Loan for Wells Fargo on March 1, 2013.

Plaintiffs assert causes of action for declaratory judgment, breach of contract, unjust enrichment, and suit to quiet title (Dkt. #104 at p. 1). Plaintiffs are also seeking damages under the Texas Deceptive Trade Practices Act ("DTPA") for alleged violations of the Texas Debt Collection Act ("TDCA") (Dkt. #104 at p. 2). Defendants assert that all of Plaintiffs' claims are barred by judicial estoppel (Dkt. #89 at pp. 9-10).

On January 22, 2016, Defendants filed their Joint Motion for Summary Judgment (Dkt. #89). On February 16, 2016, Plaintiffs filed their response (Dkt. #94). On March 2, 2016, Defendants filed their reply (Dkt. #98).

On June 3, 2016, Plaintiffs filed their Motion for Leave to File Supplemental Response to Defendants' Joint Motion for Summary Judgment (Dkt. #101). On June 6, 2016, Plaintiffs filed their Supplemental Response to Defendants' Joint Motion for Summary Judgment (Dkt. #102). On June 17, 2016, Defendants filed their response (Dkt. #108). On July 8, 2016, Defendants

filed their supplemental reply (Dkt. #112).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce

affirmative evidence. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor…unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Computer Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). Rather, the Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all of the evidence, but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS[1]

According to Defendants, all of Plaintiffs' claims are barred because "[a]ll of Plaintiffs' claims are based on their underlying contention that Wells Fargo's lien on the Property should be voided because the Loan allegedly failed to comply with . . . provisions in article XVI, section 50(a)(6) of the Texas Constitution[.]" (Dkt. #89 at p. 8). Defendants explain that "Plaintiffs' unjust enrichment claim is based on their contention that Defendants solicited payment on the Loan under the pretext that the Loan was constitutional[.]" (Dkt. #89 at p. 17). Similarly, Defendants assert that "the bases for Plaintiffs' TDCA/DTPA claims are that Defendants have attempted to collect a debt that Plaintiffs claim was void under the Texas Constitution and that Defendants have failed to properly investigate Plaintiffs' dispute regarding the validity of the

---

[1] As a preliminary matter, Defendants request that the Court take judicial notice of several records contained as Exhibits I-V (Dkt. #89 at pp. 4-5 n.1; Dkt. #89 at p. 6 n.3). Federal Rule of Evidence 201 governs judicial notice of adjudicative facts, or the facts of a particular case. It provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources who accuracy cannot reasonably be questioned." FED. R. EVID. 201(b); *see also Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998). It is unclear to the Court whether Defendants seek judicial notice that the records were produced during the bankruptcy proceedings, or whether Defendants request the Court take judicial notice of the contents of the records. The concept of Rule 201 is to take judicial notice of a fact whose accuracy cannot be reasonably questioned. Defendants have not addressed the two prongs of the Rule 201(b) test and why they are met in the present case. Therefore, the Court does not believe it would be appropriate to take notice of the contents of the records. If Defendants would like to admit certain statements from the records at trial, they will have to go through the proper evidentiary channels.

5

Loan." (Dkt. #89 at p. 9). Defendants argue that the same is true of Plaintiffs' request for declaratory judgment, its suit to quiet title, and its breach of contract claim. Therefore, the Court must first determine whether or not the doctrine of judicial estoppel applies in the current case.

"[J]udicial estoppel is 'a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position.'" *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005); *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012). "A court should apply judicial estoppel if (1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." *Jethroe*, 412 F.3d at 600. Debtors are under a continuing duty to disclose all pending and potential claims to the bankruptcy court pursuant to the bankruptcy code. *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384–85 (5th Cir. 2008); *see also* 11 U.S.C. § 521(a)(1). "Judicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal on that undisclosed asset." *Jethroe*, 412 F.3d at 600.

Defendants assert, and Plaintiffs do not deny, that the position they are currently taking is inconsistent with the position Billie took during the bankruptcy proceedings, that Billie's position was accepted by the bankruptcy court, and that Billie's failure to disclose was not inadvertent. Plaintiffs also do not dispute that privity exists between Plaintiffs, and thus, even though Alan was not a debtor in Billie's bankruptcy proceedings, the doctrine of judicial estoppel applies to them both because of their relationship.[2]

---

[2] Federal courts have held that those in privity with a prior judgment are barred by the doctrine of judicial estoppel in a subsequent action. *See In re 815 Walnut Assocs.*, 183 B.R. 423, 431–32 (E.D. Pa. 1995) (explaining that "judicial estoppel clearly may be applied against a party to a prior lawsuit *or someone in privity with that party*") (emphasis in original); *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1168–69

Plaintiffs only argue that their claims accrued after the bankruptcy proceedings. Therefore, an analysis of when Plaintiffs' claims accrued is necessary. If any of the claims accrued before the bankruptcy proceedings commenced, then judicial estoppel will bar Plaintiffs from bringing those claims. However, if a claim did not accrue until after the bankruptcy proceedings, then judicial estoppel will not bar Plaintiffs from bringing that claim.

**Breach of Contract**

Plaintiffs assert that "[a]t origination of the loan, the lender or holder of the Note materially breached . . . Article XVI of the Texas Constitution's terms and conditions" (Dkt. #104 at p. 15). Specifically, Plaintiffs allege that Defendants violated the following: (1) section 50(a)(6)(A); (2) section 50(a)(6)(B); (3) section 50(a)(6)(Q)(ix); (4) section 50(a)(6)(Q)(xi); (5) section 50(a)(6)(N) (Dkt. #104 at p. 15). Therefore, Plaintiffs argue that "[their] performance of their contractual obligations were excused by the lender or holder of the Note's material breach at origination." (Dkt. #104 at p. 15).

According to Plaintiffs, they discovered various defects in the Note in late 2013 and sent a letter dated December 23, 2013, to Ocwen and Wells Fargo's attorney, providing notice to the

---

(C.D. Ca. 2008) ("To determine whether plaintiffs are judicially estopped by statements to the California inheritance tax appraiser made on behalf of Monroe's estate, the court must first examine whether plaintiffs are in privity with Frosch, such that they may be deemed the "same party" as that which participated in the tax proceeding.") *aff'd*, 692 F.3d 983 (9th Cir.2012); *see also Maitland v. Univ. of Minn.*, 43 F.3d 357, 363–64 (8th Cir. 1994) (explaining that under the doctrines of collateral estoppel, equitable estoppel, promissory estoppel, and judicial estoppel, "the party who is to be estopped, or one in privity with that party, must have asserted a fact or claim, or made a promise, that another party relied on, that a court relied on, or that a court adjudicated"); *Long v. Knox*, 155 Tex. 581, 588, 291 S.W.2d 293, 297 (1956) (holding that husband's heir was barred by doctrine of judicial estoppel because heir was in privity with husband). In *Siller v. LPP Mortgage, Ltd.*, the court relied on federal law in determining that "the doctrine of judicial estoppel may extend to a wife, because her rights are derivative of her spouse and because she is in privity with her husband, the trial court did not abuse its discretion." No. 04-11-00496-CV, 2013 WL 1484506, at *7 (Tex. App.—San Antonio Apr. 10, 2013, *pet. denied*).

    Additionally, the Fifth Circuit has held that although a close family relationship is not sufficient by itself to establish privity with the original suit's party, when the property at issue is community property, as in this case, "[u]nder Texas law, a 'fiduciary duty exists between a husband and a wife regarding the community property controlled by each spouse.'" *Cuauhtli v. Chase Home Fin. LLC*, 308 F. App'x 772, 773-74 (5th Cir. 2009) (citing *Loaiza v. Loaiza*, 130 S.W.3d 894, 900 (Tex. App.—Fort Worth 2004, *no pet.*). The Fifth Circuit has held that this fiduciary relationship is the type of 'substantive legal relationship' that satisfies the privity requirement for purposes of claim preclusion. *Id.*

7

Defendants of the Note's constitutional defects (Dkt. #104 at p. 16). Plaintiffs assert that this letter constituted a "notice-to-cure letter" (Dkt. #104 at ¶ 61 (citing Exhibit J)). Plaintiffs note that even if their letter is found not to be an adequate "notice-to-cure letter," or inclusive of each defect that they now name, "Defendant Wells Fargo has failed to cure the defects in the 60 days after the filing of Plaintiffs' initial Complaint filed in this suit." (Dkt. #104 at ¶ 62). Defendants do not appear to dispute that they received adequate notice of the defects Plaintiffs allege.

Plaintiffs argue that the terms of the Note were breached, and that it was therefore void under the Texas Constitution, when Wells Fargo failed to cure the following defects: (1) failing to have the Note signed by Billie, Alan's spouse, at its inception on June 5, 2008 or any time after; (2) failing to close on the Note at the office of the lender, an attorney at law, or a title company; (3) allowing the Note to be formed when it was in excess of 80% of the fair market value of the homestead on the date that the Note was made; and (4) the lender's failure to sign a written acknowledgment as to the fair market value of the homestead property on the date the Note was executed (Dkt. #104 at ¶ 63). As a result of these breaches, Plaintiffs seek "the forfeiture of the principal and interest as provided by the Tex. Const. art. XVI, § 50(a)(6)(Q)(xi) and incorporated in the Note . . . [and] the return of the deed since no valid lien was ever created." (Dkt. #104 at ¶ 64).

Defendants argue that Plaintiffs' breach of contract claim is barred by judicial estoppel and the applicable statute of limitations (Dkt. #108 at p. 5). Plaintiffs contend that the breach of contract claim did not accrue until the lender failed to cure the alleged noncompliance with section 50(a)(6) after receiving notice of the defects (Dkt. #102 at ¶ 10). Plaintiffs rely on *Garofolo v. Ocwen Loan Servicing, L.L.C.,* for support of their argument about the date of the

8

accrual (Dkt. #102).[3] No. 15-0437, 2016 WL 2986237 (Tex. May 20, 2016)

*Garofolo* held that the forfeiture remedy, which is available in a breach of contract action, "is triggered when, following adequate notice, a lender fails to correct the complained-of deficiency by performing one of six available corrective measures[,]" *Id*. at *6. The Court agrees that "Plaintiffs confuse the cause of action with a contractual remedy that may or may not be available with respect to the underlying cause of action." (Dkt. #108 at p. 5).

In both *Wood* and *Garofolo*, the Texas Supreme Court was careful to distinguish between the remedy of forfeiture and the underlying cause of action for breach of contract. The court was clear that forfeiture is a remedy that may be accessed only through a breach of contract cause of action. *See Wood v. HSBC Bank USA, N.A.*, No. 14-0714, 2016 WL 2993923, at *3 (Tex. May 20, 2016) ("We explain [in *Garofolo*] that borrowers may access the forfeiture remedy through a breach of contract action based on the inclusion of those terms in their loan documents, as the Constitution requires to make the home-equity loan foreclosure-eligible."); *Garofolo*, 2016 WL 2986237, at *4 (holding that "the forfeiture remedy . . . is just one of the terms and conditions a home-equity loan must include to be foreclosure-eligible" and "[a] borrower may seek forfeiture through a breach-of-contract claim when the constitutional forfeiture provision is incorporated into the terms of a home-equity loan"). Thus, the relevant inquiry is not when the remedy of forfeiture becomes accessible to a borrower, but when the underlying cause of action for breach

---

[3] Plaintiffs cite several other cases in support of their contention that "a lender's cause of action does not accrue until the § 50(a)(6)(x) cure provision demand is denied." (Dkt. #94 at ¶ 40). However, the Court finds that these cases only describe how long a defendant has to cure after they receive proper notice, in order to avoid forfeiture. *See In re Gulley*, 436 B.R. 878, 890–91 & n.57 (Bankr. N.D. Tex. 2010) (stating that 60–day cure period under Texas constitution began when adversary proceeding was filed); *In re Cadengo*, 370 B.R. 681, 698 (Bankr. S.D. Tex. 2007) (concluding that "60–day window to cure" began to run on date complaint was filed); *In re Adams*, 307 B.R. 549, 558 (Bankr. N.D. Tex. 2004) (holding that lender received notice of defective loan on date recited in certificate of service accompanying the adversary complaint). Additionally, as Defendants point out, "if Plaintiffs are correct that accrual does not occur until after the sixty-day cure period expires, then the courts in those cases should have dismissed the lawsuits because the lawsuits would have been based on unaccrued claims." (Dkt. #98 at p. 3 n.1) Therefore, the Court agrees that "[b]y not dismissing the borrowers' claims, the courts implicitly recognized that the borrowers' causes of action had already accrued before the borrowers had even given notice to the lenders of the alleged constitutional violations." (Dkt. #98 at p. 3 n.1).

of contract accrued.[4]

The law in Texas is settled that actions for breach of contract accrue at the time of the breach. *Via Net v. TIG Ins.*, 211 S.W.3d 310, 314 (Tex. 2006). In *Garofolo*, the Texas Supreme Court differentiated between the "failure to comply" and when a lender "fails to correct the failure to comply." *Id.*, at *6 (quoting Tex. Const. art. XVI, § 50(a)(6)(Q)(x)). The failure to comply is "the lender's original transgression: its 'fail[ure] to comply with the lender's or holder's obligations under the extension of credit.'" *Id.* While "[t]he unquestionably harsh forfeiture penalty is triggered when, following adequate notice, a lender fails to correct the complained-of deficiency." *Id.*

The failures to comply alleged by Plaintiffs are the type of breaches that occur at origination. The breach of contract claim based on Defendants' alleged failures to comply could have been brought immediately after Plaintiffs' loan originated. The Court agrees that "[i]f the defects alleged by Plaintiffs did in fact occur, Plaintiffs did not have to wait until the remedy of forfeiture became available because a breach had already occurred and an injury had been sustained—i.e., an invalid lien being claimed on the property." (Dkt. #108 at p. 7). Therefore, any breach of contract claim that Plaintiffs may be allowed to assert would have accrued on the date the loan was made, on June 5, 2006, long before the filing of the bankruptcy proceedings on October 6, 2009. The doctrine of judicial estoppel thus bars any breach of contract action that may be asserted by Plaintiffs because the cause of action accrued prior to the commencement of the bankruptcy proceedings.

---

[4] In Plaintiffs' Fourth Amended Complaint, they allege that Defendants breached the terms of the Note by failing to cure the constitutional defects described above. Post-origination breach of contract occurs after origination due to a party's failure to perform a valid term or condition. *Garofolo*, 2016 WL 2986237, at *4 (stating that a lender's actions can constitute a post-origination breach of contract if they fail to perform the loan's required terms and conditions). However, as explained above, the failure to cure was not a breach of contract in and of itself, but only triggered a particular remedy available to Plaintiffs.

10

**Quiet-Title**

The Parties disagree as to whether or not judicial estoppel bars Plaintiffs' quiet-title action. Defendants claim that Plaintiffs' quiet-title action is barred by judicial estoppel because it accrued prior to the bankruptcy proceedings.[5] Plaintiffs argue that a quiet-title action does not accrue until the lender fails to cure an alleged defect in the loan after receiving notice of the defect from the borrower (Dkt. #102 at ¶ 10). According to Plaintiffs, since the alleged failure to cure did not occur until after the filing of the bankruptcy proceeding upon which judicial estoppel is based, an action to quiet-title would not be barred by judicial estoppel (Dkt. #102 at ¶ 10). Plaintiffs cite *Wood* in support of this contention. 2016 WL 2993923.

However, Defendants correctly point out that *Wood* only addresses the issue of whether a statute of limitations applies to a quiet-title action and did not address when an a quiet-title action accrues. *Id.* In *Priester*, the Fifth Circuit decided two issues: (1) whether the statute of limitations applies to quiet-title actions based on alleged noncompliance with section 50(a)(6); and (2) when the cause of action accrues. 708 F.3d at 674. The Fifth Circuit concluded that the statute of limitations applies and that the cause of action generally accrues when the loan was originated. *Id*. at 675-76. *Wood* overturned the first holding regarding the applicability of the statute of limitations. However, because *Wood* did not address the issue of accrual, the accrual portion of *Priester* remains binding law.

In Texas, the determination of when a cause of action accrues is a question of law. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). "The accrual of the cause of action means the right to institute and maintain a suit[.]" *Port Arthur Rice Milling Co. v.*

---

[5] Under Texas law, no statute of limitations applies to quiet-title actions that are based on alleged noncompliance with section 50(a)(6). *See Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 674 (5th Cir. 2013). However, the Court still must determine when the cause of action accrued for the purposes of determining if the action is barred by judicial estoppel.

11

*Beaumont Rice Mills*, 105 Tex. 514, 143 S.W. 926, 928 (1912). Thus, a cause of action accrues "when facts supporting each element of the cause of action come into existence." *Trapnell v. Sysco Food Servs., Inc.*, 850 S.W.2d 529, 551 (Tex. App.—Corpus Christi 1992), *aff'd*, 890 S.W.2d 796 (Tex. 1994); *see also S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) ("As a rule, we have held that a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.").

Defendants argue that if the elements of a quiet-title action were satisfied, they were satisfied on June 5, 2006, the date the loan was made (Dkt. #108 at p. 4 (citing Dkt. #89-1 at p. 18)). The elements of a quiet-title action are: (1) the plaintiff has an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *Sadler v. Duvall*, 815 S.W.2d 285, n.2 (Tex. App.—Texarkana 1991, *writ denied*); *Best Inv. Co. v. Parkhill*, 429 S.W.2d 531, 534 (Tex. Civ. App.—Corpus Christi 1968, *writ dism'd*).

With regard to the first two elements, it is undisputed that Plaintiffs had title to the property and that title was affected by Defendants' claim of a lien on the date of closing (Dkt. #108 at p. 4). As to the third element, the Texas Supreme Court held in *Wood* and *Garofolo* that compliance with the Texas Constitution is measured at origination and that a lien securing a constitutionally noncompliant home-equity loan is invalid and unenforceable (i.e., not foreclosure-eligible) at the moment the loan originates and remains invalid and unenforceable unless subsequently cured. *See Wood*, 2016 WL 2993923, at *5 ("A lien that was invalid from origination remains invalid until it is cured."); *Garofolo*, 2016 WL 2986237, at *4 ("From a constitutional perspective, compliance is measured by the loan as it exists at origination and whether it includes the terms and conditions required to be foreclosure-eligible.") (citing *Sims v.*

*Carrington Mortg. Servs.*, *L.L.C.*, 440 S.W.3d 10, 17 n.28 (Tex. 2014)).

In the current case, it is clear that the alleged non-compliance occurred at the date of the inception of Plaintiffs' loan. Since the lien was allegedly invalid from its origination, all of the elements of a quiet-title claim were satisfied on the date of the inception of the loan. Thus, Plaintiffs' claim accrued on June 5, 2006, more than three years before the bankruptcy proceeding was filed (Dkt. #108 at p. 5). Therefore, the doctrine of judicial estoppel bars any quiet-title action that may be asserted by Plaintiffs because the action accrued prior to the filing of the bankruptcy proceedings.

**Declaratory Judgment**

Plaintiffs seek a declaratory judgment stating the following: (1) the Security Interest is void *ab initio*; (2) the Note does not contain the terms and conditions required by section 50(a)(6), Article XVI of the Texas Constitution in order for the Security Interest to be Foreclosure-Eligible; (3) the Security Instrument is void because the Note was not signed by Billie; (4) the Note was not closed on at the office of the lender, an attorney at law, or a title company, and thus the Security Instrument is void; (5) the Note was in excess of 80% of the fair market value of the homestead, making the Security Instrument void; (6) the Security Instrument is void because the lender did not sign a written acknowledgment as to the fair market value on the date the Note was executed; (7) Wells Fargo and Sand Canyon shall forfeit all principal and interest paid from June 2006 to the present time that related to the extension of credit by the Note, and the note is void for all purposes; (8) any purported lien evidenced by the Deed of Trust is void and does not constitute a lien or encumbrance upon the property (Dkt. #104 at ¶ 47). However, all of the declarations that Plaintiffs request require the Court to find that the contract was not in compliance with the Constitution. The claims are barred by judicial estoppel for the

reasons stated above. Therefore, the Court finds that Defendant's motion for summary judgment on Plaintiffs' declaratory judgment claim is granted.

*Unjust Enrichment*

Plaintiffs allege that "Wells Fargo, and Sand Canyon, via their servicers, including Ocwen, continuously solicited payment from Plaintiff Alan Feuerbacher under the home equity Note from 2006 until 2013." (Dkt. #104 at ¶ 67). Plaintiffs state that "[t]hese payments were obtained under the pretext that the Note met the requirements of Tex. Const. art. XVI, § 50(a)(6)." (Dkt. #104 at ¶ 68). Plaintiffs argue that their payments constitute a benefit that is unconscionable for Wells Fargo and Sand Canyon to retain (Dkt. #104 at ¶ 69).

Defendants argue that since "Plaintiffs' unjust enrichment claim is based entirely on their contention that the Loan should be voided under the Texas Constitution[,]" summary judgment should be granted because Defendants complied with the Texas Constitution and because Plaintiffs' claims are barred by judicial estoppel (Dkt. #89 at p. 25).[6] The Court agrees that Plaintiffs' unjust enrichment claim is barred by judicial estoppel.

*TDCA*

Plaintiffs allege that, "[p]ursuant to Tex. Fin. Code Ann. § 392.404, [Defendants'] violations of the [TDCA] also constitute a deceptive trade practice under Subchapter E, Chapter 17, Tex. Bus. & Com. Code Ann. . . . and is actionable under that chapter." (Dkt. #104 at ¶ 73). Plaintiffs allege that Ocwen, acting on behalf of Wells Fargo, "[is] reporting that the Plaintiff is indebted to the defendants." (Dkt. #104 at ¶ 74 (citing Exhibit M)). Plaintiffs state that "Defendants are reporting that the plaintiff owes a non-recourse debt" and that "Ocwen, Wells Fargo, and Sand Canyon, have over the course of years since 2006 attempted to collect monies

---

[6] Defendants also argue throughout their briefing that the Loan complied with the Texas Constitution. *See* Dkt. #89. However, since Plaintiffs' claim that the Loan did not comply with the Texas Constitution at its inception is barred by judicial estoppel, it is not necessary for the Court to address this argument.

by falsely representing to the Plaintiff . . . that he owes debt in violation of Tex. Fin. Code Ann. § 392.304(a)(8)." (Dkt. #104 at ¶ 74). Plaintiffs argue that "[they] do not owe the monies to the defendants, as the Note and deed of trust is void." (Dkt. #104 at ¶ 75).

Defendants state that they are entitled to summary judgment on Plaintiffs' TDCA claims "[b]ecause the Loan complied with the Texas Constitution and because Plaintiffs' claims seeking to void the Lien are barred as a matter of law by limitations and/or judicial estoppel[.]" (Dkt. #89 at p. 26). As stated above, the claim that the Loan was void is barred by the doctrine of judicial estoppel. Therefore, Plaintiffs' claim that Defendants were violating Tex. Fin. Code Ann. § 392.304(a)(8) by reporting that Plaintiff was indebted to Defendants, over the course of the Note's life, is barred.

However, the issue of whether Defendants' had additional responsibilities regarding loan disputes is not barred by judicial estoppel. Plaintiffs allege that they have informed Defendants that they do not believe they owe them money and that, in response, "Defendants have not reported the dispute to the credit agencies." (Dkt. #104 at ¶ 76).

Plaintiffs further allege that

Defendant violated the Texas Debt Collection Practices Act by publishing the representation within Plaintiffs' credit file with one or more credit reporting agencies; by failing to fully and properly investigate the Plaintiffs' dispute of the representation; by failing to review all relevant information regarding same; by failing to correctly report results of an accurate investigation to each credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the representations to the consumer reporting agencies.

(Dkt. #104 at ¶ 77). Plaintiffs claim to have suffered damages as a result of these actions (Dkt. #104 at p. 78).

Defendants first argue that Plaintiffs failed to cite any support for Defendants obligation to perform the responsibilities cited above. While Plaintiffs do not name any specific statutory

15

provisions, the essence of Plaintiffs claim appears to be relying on section 392.202, which describes the requirements for correction of third-party debt collector's or credit bureau's files.

Defendants argue that "even if the Loan did not comply with the Texas Constitution, the debt was still a valid obligation." (Dkt. #89 at p. 26). Defendants state that "while there might be a question under such circumstances as to whether the Loan is secured, there is no dispute that the Loan itself constitutes a valid obligation to repay borrowed money." (Dkt. #89 at p. 26). Thus, Defendants assert that they did not violate the TDCA by reporting the Loan, a valid obligation agreed to by Plaintiffs, to credit reporting agencies.

The Court agrees that even if the loan did not comply with the Texas Constitution, it was still a valid obligation. Therefore, Defendants did not violate the TDCA by reporting the valid obligation. Thus, the Court finds that Plaintiffs' TDCA claims fail as a matter of law.

*DTPA*

Plaintiffs are seeking damages under the DTPA for Defendant's alleged violations of the TDCA (Dkt. #104 at p. 7). Plaintiffs' DTPA claim is based on a tie-in provision to the TDCA (Dkt. #68 at ¶ 60). However, the right to obtain relief under the DTPA is conditioned on the claimant being a "consumer" as defined by that statute. Defendants persuasively argue that Plaintiffs are not "consumers" under the statute and thus cannot obtain relief under the DTPA (Dkt. #89 at p. 35 (citing Tex. Bus. & Com. Code § 17.50(b) ("In a suit filed under this section, each consumer who prevails may obtain [specified damages and other relief].")))). *See Burnette v. Wells Fargo Bank, N.A.*, No. 4:09-CV-370, 2010 WL 1026968, at *9 (E.D. Tex. Feb. 16, 2010) (noting that section 17.50(h)—which provides "tie-in" relief under the DTPA for violations of other laws such as the TDCA—"does not exempt claimants from showing that they qualify as a 'consumer' under § 17.45(4)"); *Marketic v. U.S. Bank Nat'l Ass'n*, 436 F. Supp. 2d

16

842, 854-55 (N.D. Tex. 2006) (citing *Mendoza v. American Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex. App.—San Antonio 1996, *no writ*)).

Whether a person is a consumer is a question of law. *Olufemi-Jones v. Bank of Am., N.A.*, No. 3:12-cv-3428-L, 2013 WL 1482544, at *2 (N.D. Tex. Apr. 10, 2013) (citing *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App.—San Antonio 2002, *pet. denied*)). A person who seeks only to borrow money is not a consumer under the DTPA because the lending of money, without more, does not involve a good or a service. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984); *see also Federal Deposit Ins. Corp. v. Munn*, 804 F.2d 860, 863 (5th Cir. 1986) (summarizing Texas law as holding that "goods" and "services" do not include intangible chattels such as stocks, money, or loans).

The law in Texas is clear that borrowers who obtain home equity loans are not consumers under the DTPA. *See Fassihi v. JP Morgan Chase Bank, N.A.*, No. 3:12-cv-4414-L, 2014 WL 4230324, at *5 (N.D. Tex. Aug. 27, 2014) (finding plaintiff who sought a home equity loan was not a consumer under the DTPA); *Bibolotti v. Am. Home Mortgage Servicing, Inc.*, No. 4:11-CV-472, 2013 WL 2147949, at *18 (E.D. Tex. May 15, 2013) (holding that since the plaintiff's claims arose out of a loan, and the plaintiff was not seeking to purchase any goods or services from Defendants, the plaintiff was not a "consumer" with respect to the loan); *Finegan v. Chase Home Finance, LLC*, No. 4:10-cv-04645, 2012 WL 444046, at *3 (S.D. Tex. Feb. 10, 2012) (same); *VanHauen v. Am. Home Mortgage Servicing, Inc.*, No. 4:11-CV-461, 2012 WL 874330, at *4 (E.D. Tex. Feb. 17, 2012), *report and recommendation adopted*, No. 4:11-CV-461, 2012 WL 874328 (E.D. Tex. Mar. 14, 2012) (finding that because the plaintiff's claims arose out of a loan, and the services provided by the defendant were as the loan servicer, plaintiff was not a consumer for the purposes for the DTPA). Because it is undisputed that the Loan is a home

17

equity loan, Plaintiffs are not consumers under the DTPA and their claim fails as a matter of law.

## CONCLUSION

The doctrine of judicial estoppel applies and all of Plaintiffs' claims, except for their claim under section 392.202 of the TDCA, fail as a matter of law because they accrued prior to the filing of the bankruptcy proceedings. Billie did not disclose her claims against Defendants when she filed for bankruptcy, and she had the affirmative duty to do so at the time she filed her bankruptcy petition. Plaintiffs are thus judicially estopped from taking the inconsistent position that such claims exist in this case.

Furthermore, Plaintiffs' claim under section 392.202 of the TDCA fails as a matter of law because even if the Loan was not in compliance with the Texas Constitution, it was still a valid obligation.

It is therefore **ORDERED** that Defendants' Joint Motion for Summary Judgment (Dkt. #89) is hereby **GRANTED**.

It is further **ORDERED** that all of Plaintiffs' claims are hereby **DISMISSED** with prejudice.

**SIGNED this 11th day of July, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE